UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

| | |
|---|---|
| JULIE A. SU,<br>Acting Secretary of Labor, United States<br>Department of Labor,<br><br>    Plaintiff,<br><br>v.<br><br>HYUNDAI MOTOR MANUFACTURING<br>ALABAMA, LLC, SMART ALABAMA, LLC,<br>and BEST PRACTICE SERVICE, LLC,<br><br>    Defendants. | **COMPLAINT**<br>(Injunctive Relief Sought) |

This cause of action, which arises under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, hereinafter the "Act" or the "FLSA," is brought by the Acting Secretary of Labor, Julie A. Su, pursuant to Section 17 of the Act, 29 U.S.C. § 217, to restrain the Defendants, Hyundai Motor Manufacturing Alabama, LLC, SMART Alabama, LLC, and Best Practice Service, LLC, from violating child labor laws set forth in Sections 12(a) and 12(c) of the Act, 29 U.S.C. §§ 212(a)/(c), and for an order requiring Defendants to disgorge profits related to their use of oppressive and hazardous child labor.

### INTRODUCTION

Child labor is an unfortunate reality in the United States today. This case is about who bears responsibility for child labor violations in an automotive supply chain. As detailed below, a thirteen-year-old girl worked up to 50-60 hours per week at manufacturing facility in Luverne, Alabama over a period of six to seven months. Instead of attending middle school, she worked on an assembly line making parts. Those parts were shipped to Montgomery, Alabama,

where they ended up on vehicles that were ultimately sold to consumers throughout the country. The Acting Secretary seeks the Court's intervention to enjoin future violations of the Act and to require Defendants to disgorge profits attributable to the oppressive child labor.

## JURISDICTION AND VENUE

1. This court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in the U.S. District Court for the Middle District of Alabama because a substantial part of the events giving rise to the claim occurred in this judicial district.

## THE PARTIES

3. Plaintiff Julie A. Su, the Acting Secretary of Labor, United States Department of Labor, is authorized by Section 17 of the Act, 29 U.S.C. § 217, to bring actions to restrain violations of Section 15 of the Act, 29 U.S.C. § 215.

4. Hyundai Motor Manufacturing Alabama, LLC (hereinafter "HMMA") is a limited liability company organized under the laws of Delaware with a place of business located at 700 Hyundai Boulevard, Montgomery, Alabama 36105. HMMA operates a facility at this location where it manufactures automobiles for sale throughout the United States.

5. During the relevant time, SMART Alabama, LLC (hereinafter "SMART") was a limited liability company organized under the laws of Delaware which had a place of business located at 121 Shin Young Drive, Luverne, Alabama 36049. Defendant operates a facility at this location where it manufactures component parts, such as body panels, for HMMA. As of November 1, 2023, SMART changed its name to ITAC Alabama, LLC. The street address is now 121 ILJI Drive, Luverne, Alabama 36049.

6. Best Practice Service, LLC (hereinafter "BPS") is a limited liability company organized under the laws of Alabama which had a place of business located at 722 Oliver Road, Montgomery, Alabama 36117. BPS is a staffing agency that supplied labor to SMART/HMMA. Upon information and belief, BPS is no longer in business.

**DEFENDANTS' EMPLOYEES ARE COVERED BY THE FLSA**

7. At all times hereinafter mentioned:

A. Defendants are engaged in related activities, performed either through unified operation or common control for a common business purpose, that constitute an enterprise within the meaning of § 3(r) of the Act, 29 U.S.C. § 203(r); and

B. Such enterprise, which employed employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce, and having an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated), constitutes an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of § 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

C. Therefore, during the period at issue, employees at HMMA, SMART, and BPS were employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of Sections 3(r) and/or 3(s)(1) of the Act, and the employees and the enterprise were, therefore, subject to Sections 12 and 15 of the Act, 29 U.S.C. §§ 212, 215.

8. At all times hereinafter mentioned, Defendants employed employees who were engaged in the production of goods for sale throughout the United States. Such employees,

3

therefore, have been and are also engaged in commerce or in the production of goods for commerce within the meaning of §§ 3(b) and (j), respectively, of the Act, 29 U.S.C. §§ 203(b)/(j), and were, therefore, subject to Sections 12 and 15 of the Act, 29 U.S.C. §§ 212, 215.

## DEFENDANTS VIOLATED SECTION 12(C) OF THE FLSA AND REGULATIONS FOUND AT 29 C.F.R. PART 570

9. On or about July 11, 2021 to approximately February 1, 2022, Defendants willfully and repeatedly violated the provisions of §§ 12(c) and 15(a)(4) of the Act, 29 U.S.C. §§ 212(c) and 215(a)(4), and regulations found at 29 C.F.R., Part 570, by employing oppressive child labor, within the meaning of § 3(l) of the Act, 29 U.S.C. § 203(l), in commerce or in the production of goods for commerce, or in an enterprise engaged in commerce or in the production of goods for commerce, in violation of the FLSA and regulations promulgated pursuant thereto.

10. One minor employee, "EC," who was under the age of 14, worked on an assembly line in the manufacturing facility that SMART operates in Luverne, Alabama. "EC" worked with machines that formed sheets of metal into body parts for automobiles. "EC" worked at the facility up to 50 to 60 hours per week. "EC" was employed in violation of 29 C.F.R. § 570.33(a), which prohibits the employment of individuals under the age of 16 in manufacturing occupations; 29 C.F.R. § 570.59, which prohibits individuals under the age of 18 from operating metal forming, punching, and shearing machines; and 29 C.F.R. § 570.119, which prohibits the employment of minors under the age of 14 under any circumstance.

11. Prior to the discovery of this minor, BPS knew or had reason to know that this employee was underage.

12. Upon information and belief, other minors were also employed by Defendants as well. After it was discovered that EC was employed at the facility in Luverne,

SMART informed BPS that two additional employees were not welcome back at the facility due to their appearance and other physical characteristics, which suggested they were also underage.

**<u>DEFENDANTS ARE LIABLE FOR SUBJECTING<br>CHILDREN TO OPPRESSIVE CHILD LABOR</u>**

13. The minor(s) referenced above were employed by BPS. As indicated above, BPS is/was a staffing agency that supplied labor to SMART.

14. SMART, in turn, supervised and directed the work of these minors on a daily basis. Individuals employed by SMART assigned tasks to these employees, determined when they would start and stop work, and controlled significant aspects of how the employees performed their jobs on a day-to-day basis. SMART also owned the location where the work was performed (*i.e.*, the manufacturing facility in Luverne) and the jobs of these employees were integral to the overall operations of SMART. Further, SMART retained the right to terminate these employees or exclude them from the facility, as it did after it was discovered that EC was working at the facility. All the employees at the facility in Luverne, including those employed by BPS, were economically dependent on SMART. Accordingly, SMART jointly employed the minor employees with BPS.

15. HMMA is a limited liability company that is owned by Hyundai Motor America, Inc. During the relevant period, Hyundai Motor America, Inc. owned 72.45 percent of SMART, Inc., the corporation that owned SMART.

16. Nearly all, if not the entirety, of the component parts that SMART manufactured during the relevant period were shipped to HMMA in Montgomery, Alabama. SMART existed at HMMA's discretion to provide HMMA with the parts that HMMA needed, and SMART had no separate or independent business purpose. In addition, during the relevant

period, SMART used robots and molds that were owned and provided by HMMA (to manufacture the component parts it supplied to HMMA); employees at SMART were subject to HMMA's Code of Conduct; employees at SMART were integral to HMMA's business; and HMMA loaned SMART significant sums of money (exceeding $100,000,000) due to SMART's cash-flow issues. Further, during the relevant period, employees of HMMA served as corporate officers of SMART, and they served on the board of directors of SMART, Inc., the entity that owned SMART, giving HMMA significant control over the overall operations at SMART.

17. During the relevant period, HMMA also indirectly controlled and supervised the minor employee(s); retained the right to modify the terms and conditions of their employment; and significantly invested in equipment and facilities necessary to their work. The minor employee(s) also performed work that was integral to the operations of HMMA, as these employees manufactured component parts that were later installed on vehicles manufactured, sold, and placed into interstate commerce by HMMA.

18. During the relevant period, SMART's operations were so integrated with the business needs of HMMA that the two companies were a single employer for purposes of liability under the FLSA. Alternatively, because HMMA had such extensive control over and responsibility for SMART's business operations, HMMA and SMART jointly employed the minor(s), along with BPS. All three companies are, therefore, liable for violating the FLSA's prohibition against oppressive child labor.

### DEFENDANTS VIOLATED SECTION 12(a) OF THE FLSA BY SHIPPING "HOT GOODS" PRODUCED WITH OPPRESSIVE CHILD LABOR

19. As indicated above, Defendants employed the minor employee(s) in violation of §§ 12(c) and 15(a)(4) of the Act, 29 U.S.C. §§ 212(c) and 215(a)(4), and regulations found at 29 C.F.R., Part 570, and subjected these employee(s) to oppressive child labor.

6

20.     Section 12(a) of the Act, 29 U.S.C. § 212(a), prohibits, with limited exceptions, producers, manufacturers and dealers from shipping or delivering for shipment in commerce any goods produced in an establishment situated in the United States in or about which within thirty days prior to the removal of such goods therefrom any oppressive child labor has been employed.

21.     Defendants, individually and collectively, violated Sections 12(a) and 15(a)(4) of the Act, 29 U.S.C. §§ 212(a) and 215(a)(4), by shipping or delivering for shipment goods produced in an establishment that employed oppressive child labor. Throughout the time the minor employee(s) worked in Luverne, Defendants shipped and/or delivered for shipment goods from their respective facilities, such as component parts and fully assembled automobiles, that were manufactured in facilities that employed oppressive child labor. Therefore, these goods were "hot goods," as contemplated by Section 12(a) of the Act, and Defendants violated Sections 12(a) and 15(a)(4) of the Act, by shipping the goods in commerce and/or delivering the goods for shipment in commerce.

### **DEFENDANTS PROFITED FROM THE USE OF OPPRESSIVE CHILD LABOR AND SUBJECTED OTHER LAW-ABIDING EMPLOYERS TO UNFAIR COMPETITION**

22.     As a result of the forgoing illegal conduct, Defendants unfairly profited by their use of oppressive child labor. Consumers throughout the United States unknowingly purchased automobiles that were manufactured with oppressive child labor. Defendants profited by these sales, and financial transactions related to the same, and continue to retain those profits today.

23.     Defendants also subjected other law-abiding employers to unfair competition by their use of oppressive child labor. Vulnerable employees, such as children, work

for less money, they are less likely to complain about working conditions, less likely to organize, and they are less likely to assert rights in the workplace. Defendants' exploitation here prejudiced other law-abiding employers and gave Defendants an unfair advantage in the marketplace.

## **PRAYER FOR RELIEF**

WHEREFORE, cause having been shown, the Acting Secretary respectfully requests that the Court enter judgment against Defendants and provide the following relief:

A. Issue an order permanently enjoining and restraining the Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with them, from violating the provisions of Section 12(a) of the Act, 29 U.S.C. § 212(a);

B. Issue an order permanently enjoining and restraining the Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with them, from violating the provisions of Section 12(c) of the Act, 29 U.S.C. § 212(c);

C. Issue an order requiring Defendants to disgorge all profits related to their use of oppressive child labor, including but not limited to the profits earned from providing oppressive child labor, the profits earned from the use of oppressive child labor to manufacture goods, and the profits related to the sale of automobiles produced with oppressive child labor; and

      D.      Issue an order awarding the Acting Secretary with any other relief the Court deems necessary and appropriate, including costs of this action.

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

| POST OFFICE ADDRESS: | TREMELLE I. HOWARD<br>Regional Solicitor |
|---|---|
| Office of the Solicitor<br>U. S. Department of Labor<br>618 Church Street, Suite 230<br>Nashville, Tennessee 37219<br>Telephone: 615/781-5330<br>*nash.fedcourt@dol.gov*<br>*motzny.thomas.j@dol.gov*<br>*forbes.kristin.a@dol.gov* | SCHEAN G. BELTON<br>Associate Regional Solicitor<br><br>MATT S. SHEPHERD<br>Counsel for Wage and Hour<br><br> /s/ Thomas J. Motzny<br>THOMAS J. MOTZNY<br>KRISTIN A. FORBES<br>Trial Attorneys<br><br>U. S. Department of Labor<br>Attorneys for Plaintiff |

9