UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

| | |
|---|---|
| JULIE A. SU,<br>Acting Secretary of Labor, United States<br>Department of Labor,<br><br>      Plaintiff,<br><br>v.<br><br>HYUNDAI MOTOR MANUFACTURING<br>ALABAMA, LLC, SMART ALABAMA, LLC,<br>and BEST PRACTICE SERVICE, LLC,<br><br>      Defendants. | **FIRST AMENDED COMPLAINT**<br>(Injunctive Relief Sought) |

This cause of action, which arises under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, hereinafter the "Act" or the "FLSA," is brought by the Acting Secretary of Labor, Julie A. Su, pursuant to Section 17 of the Act, 29 U.S.C. § 217, to restrain the Defendants, Hyundai Motor Manufacturing Alabama, LLC, SMART Alabama, LLC, and Best Practice Service, LLC, from violating child labor laws set forth in Sections 12(a) and 12(c) of the Act, 29 U.S.C. §§ 212(a)/(c).

## INTRODUCTION

Child labor is an unfortunate reality in the United States today. This case is about who bears responsibility for child labor violations in an automotive supply chain. As detailed below, a thirteen-year-old girl worked up to 50-60 hours per week at manufacturing facility in Luverne, Alabama over a period of six to seven months. Instead of attending middle school, she worked on an assembly line making parts. Those parts were shipped to Montgomery, Alabama, where they ended up on vehicles that were ultimately sold to consumers throughout the country.

The Acting Secretary seeks the Court's intervention to hold the Defendants liable for the child labor violations at issue and to enjoin future violations of the Act.

## JURISDICTION AND VENUE

1. This court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in the U.S. District Court for the Middle District of Alabama because a substantial part of the events giving rise to the claim occurred in this judicial district.

## THE PARTIES

3. Plaintiff Julie A. Su, the Acting Secretary of Labor, United States Department of Labor, is authorized by Section 17 of the Act, 29 U.S.C. § 217, to bring actions to restrain violations of Section 15 of the Act, 29 U.S.C. § 215.

4. Hyundai Motor Manufacturing Alabama, LLC (hereinafter "HMMA") is a limited liability company organized under the laws of Delaware with a place of business located at 700 Hyundai Boulevard, Montgomery, Alabama 36105. HMMA operates a facility at this location where it manufactures automobiles for sale throughout the United States.

5. During the relevant time, SMART Alabama, LLC (hereinafter "SMART") was a limited liability company organized under the laws of Delaware which had a place of business located at 121 Shin Young Drive, Luverne, Alabama 36049. Defendant operates a facility at this location where it manufactures component parts, such as body panels, for HMMA. As of November 1, 2023, SMART changed its name to ITAC Alabama, LLC. The street address is now 121 ILJI Drive, Luverne, Alabama 36049.

6. Best Practice Service, LLC (hereinafter "BPS") is a limited liability

company organized under the laws of Alabama which had a place of business located at 722 Oliver Road, Montgomery, Alabama 36117. BPS is a staffing agency that supplied labor to SMART/HMMA. Upon information and belief, BPS is no longer in business. During the relevant time period, the owner of BPS regularly worked on site at the SMART plant in Luverne. BPS's owner maintained a continuous presence at the SMART plant.

### **DEFENDANTS' EMPLOYEES ARE COVERED BY THE FLSA**

7. At all times hereinafter mentioned:

   A. Defendants are engaged in related activities, performed either through unified operation or common control for a common business purpose, that constitute an enterprise within the meaning of § 3(r) of the Act, 29 U.S.C. § 203(r); and

   B. Defendants, both individually and collectively, employed employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce (such as machines, tools, supplies, computers, etc.) and having an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated), constitute an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of § 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

   C. Therefore, during the period at issue, employees at HMMA, SMART, and BPS were employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of Sections 3(r) and/or 3(s)(1) of the Act, and the employees and the enterprise were, therefore, subject to Sections 12 and 15 of the Act, 29 U.S.C. §§ 212, 215.

8. At all times hereinafter mentioned, Defendants, both individually and collectively, employed employees who were engaged in the production of goods for sale throughout the United States – in the case of BPS/SMART, body panels which were incorporated into automobiles; and in the case of HMMA, the automobiles themselves. Such employees, therefore, have been and are also engaged in commerce or in the production of goods for commerce within the meaning of §§ 3(b) and (j), respectively, of the Act, 29 U.S.C. §§ 203(b)/(j), and were, therefore, subject to Sections 12 and 15 of the Act, 29 U.S.C. §§ 212, 215.

### DEFENDANTS VIOLATED SECTION 12(C) OF THE FLSA AND REGULATIONS FOUND AT 29 C.F.R. PART 570

9. On or about July 11, 2021 to approximately February 1, 2022, Defendants willfully and repeatedly violated the provisions of §§ 12(c) and 15(a)(4) of the Act, 29 U.S.C. §§ 212(c) and 215(a)(4), and regulations found at 29 C.F.R., Part 570, by employing oppressive child labor, within the meaning of § 3(l) of the Act, 29 U.S.C. § 203(l), in commerce or in the production of goods for commerce, or in an enterprise engaged in commerce or in the production of goods for commerce, in violation of the FLSA and regulations promulgated pursuant thereto.

10. SMART failed to take any reasonable steps to determine that "EC," a 13-year-old employee, was underage. EC worked on the assembly line at SMART's manufacturing facility in Luverne, Alabama, operating machines that shaped metal sheets into car parts. She worked long hours, up to 50 to 60 hours per week, in direct violation of federal regulations prohibiting individuals under 16 from working in manufacturing roles, 29 C.F.R. § 570.33(a), and those under 18 from operating dangerous machinery such as metal forming, punching, and shearing machines, 29 C.F.R. § 570.59. Additionally, the employment of minors under the age of 14 is strictly forbidden under any circumstances, 29 C.F.R. § 570.119.

11. Prior to the discovery of EC, Defendants had the opportunity through reasonable diligence to acquire knowledge that this employee was underage. EC began working at SMART under the name "E***** L*****." When documents showing the name "E***** L*****" were rejected, EC presented new documents with the name "J***** O*****." For the remainder of her time at SMART, EC's name badge said "E***** L*****" and her hours were reported from SMART to BPS as "E***** L*****." However, BPS paid EC under the name "J***** O*****," an identity that BPS knew to be an alias. Moreover, and in addition to these facts, EC appearance and physical characteristics also suggested that she was very young – too young to be employed in a manufacturing facility.

12. Throughout EC's employment, SMART did not take any independent action to verify that the temporary workers in its facility, including EC, were of legal working age. Instead, SMART relied solely on staffing agencies, such as BPS, to ensure compliance with labor laws. This lack of oversight and failure to conduct basic checks on the age and identity of workers allowed EC, a minor, to work in a hazardous occupation for an extended period.

13. The discovery of EC's underage status did not come from any proactive measures by SMART or BPS. Instead, it was only revealed after a serious incident – EC failed to return home after work, leading her father to contact the police. The subsequent investigation triggered an AMBER alert, and EC was eventually found in Georgia with an adult male coworker from SMART. This incident highlights the Defendants' failure to protect vulnerable workers and ensure compliance with basic child labor regulations.

14. Upon information and belief, EC was not the only minor employed by SMART and BPS. After EC's underage employment was discovered, SMART informed BPS that two other employees were no longer permitted to return to the facility due to their youthful

appearance and physical characteristics, which strongly indicated that they were also underage. These individuals are believed to have been EC's siblings, including her younger brother, and they may have also worked at the SMART plant.

15. Following EC's disappearance and subsequent recovery, further evidence emerged pointing to a broader problem of child labor at the SMART facility. Reuters, a respected news organization, interviewed former employees of SMART, who confirmed that child labor had been widespread at the plant during their time working there. These interviews further demonstrate that SMART and BPS failed to prevent the employment of minors, ignoring physical indicators and failing to take appropriate steps to ensure the legal age of their workers. This pattern of neglect suggests a systemic issue of underage labor that extended beyond EC, putting more minors at risk in hazardous working conditions.

## **DEFENDANTS ARE LIABLE FOR SUBJECTING CHILDREN TO OPPRESSIVE CHILD LABOR**

16. The minor(s) referenced above were employed by BPS. As indicated above, BPS is/was a staffing agency that supplied labor to SMART.

17. SMART, in turn, supervised and directed the work of these minors on a daily basis. Individuals employed by SMART assigned tasks to these employees, determined when they would start and stop work, and controlled significant aspects of how the employees performed their jobs on a day-to-day basis. SMART also owned the location where the work was performed (*i.e.*, the manufacturing facility in Luverne) and the jobs of these employees were integral to the overall operations of SMART. Further, SMART retained the right to terminate these employees or exclude them from the facility, as it did after it was discovered that EC was working at the facility. All the employees at the facility in Luverne, including those employed by BPS, were economically dependent on SMART. Accordingly, SMART jointly

employed the minor employees with BPS.

18. HMMA is a limited liability company that is owned by Hyundai Motor America, Inc. During the relevant period, Hyundai Motor America, Inc. owned 72.45 percent of SMART, Inc., the corporation that owned SMART.

19. Nearly all, if not the entirety, of the component parts that SMART manufactured during the relevant period were shipped to HMMA in Montgomery, Alabama. SMART existed at HMMA's discretion to provide HMMA with the parts that HMMA needed, and SMART had no separate or independent business purpose. In addition, during the relevant period, SMART used robots and molds that were owned and provided by HMMA (to manufacture the component parts it supplied to HMMA); employees at SMART were subject to HMMA's Code of Conduct; employees at SMART were integral to HMMA's business; and HMMA loaned SMART significant sums of money (exceeding $100,000,000) due to SMART's cash-flow issues. Further, during the relevant period, employees of HMMA served as corporate officers of SMART, and they served on the board of directors of SMART, Inc., the entity that owned SMART, giving HMMA significant control over the overall operations at SMART.

20. During the relevant period, HMMA also indirectly controlled and supervised the minor employee(s); retained the right to modify the terms and conditions of their employment; and significantly invested in equipment and facilities necessary to their work. The minor employee(s) also performed work that was integral to the operations of HMMA, as these employees manufactured component parts that were later installed on vehicles manufactured, sold, and placed into interstate commerce by HMMA.

21. With respect to SMART's employment practices and in particular the employment of children, HMMA requires SMART to affirm that SMART complies with all

applicable laws regarding the employment of children. However, HMMA's control over and involvement in SMART's employment practices relating to child labor go well beyond that affirmation requirement. HMMA requires SMART to immediately notify HMMA's General Counsel specifically if any person under the age of 18 is working at SMART or any of SMART's staffing agencies. HMMA may unilaterally direct SMART to audit itself, as well as its staffing agencies and contractors, to fully review all employees and assess compliance with applicable child labor laws. HMMA may also unilaterally decide to conduct its own audit of SMART to assess compliance with applicable child labor laws, and SMART must fully cooperate with such audits. HMMA directed that both such audits occur following the child labor violations alleged in this Complaint. In addition, HMMA may unilaterally direct SMART to implement and change its compliance monitoring regarding child labor and to strengthen its human resources functions, and HMMA gave such direction to SMART following the child labor violations alleged in this Complaint. HMMA's control over and involvement in the operations of SMART and its staffing agencies with respect to the employment of children show that HMMA could have detected, prevented, and/or corrected the child labor violations alleged in this Complaint through the exercise of reasonable diligence.

22. During the relevant period, SMART's operations were so integrated with the business needs of HMMA that the two companies were a single employer for purposes of liability under the FLSA. Alternatively, because HMMA had such extensive control over and responsibility for SMART's business operations, HMMA and SMART jointly employed the minor(s), along with BPS. All three companies are, therefore, liable for violating the FLSA's prohibition against oppressive child labor.

23. By virtue of their joint employment of EC, BPS, SMART and HMMA

are jointly and severally liable for the violations alleged in this Complaint.

### DEFENDANTS VIOLATED SECTION 12(a) OF THE FLSA BY SHIPPING "HOT GOODS" PRODUCED WITH OPPRESSIVE CHILD LABOR

24. As indicated above, Defendants employed the minor employee(s) in violation of §§ 12(c) and 15(a)(4) of the Act, 29 U.S.C. §§ 212(c) and 215(a)(4), and regulations found at 29 C.F.R., Part 570, and subjected these employee(s) to oppressive child labor.

25. Section 12(a) of the Act, 29 U.S.C. § 212(a), prohibits, with limited exceptions, producers, manufacturers and dealers from shipping or delivering for shipment in commerce any goods produced in an establishment situated in the United States in or about which within thirty days prior to the removal of such goods therefrom any oppressive child labor has been employed.

26. Defendants, individually and collectively, violated Sections 12(a) and 15(a)(4) of the Act, 29 U.S.C. §§ 212(a) and 215(a)(4), by shipping or delivering for shipment goods produced in an establishment that employed oppressive child labor. Throughout the time the minor employee(s) worked in Luverne, Defendants shipped and/or delivered for shipment goods from their respective facilities, such as component parts and fully assembled automobiles, that were manufactured in facilities that employed oppressive child labor. Therefore, these goods were "hot goods," as contemplated by Section 12(a) of the Act, and Defendants violated Sections 12(a) and 15(a)(4) of the Act, by shipping the goods in commerce and/or delivering the goods for shipment in commerce.

### DEFENDANTS PROFITED FROM THE USE OF OPPRESSIVE CHILD LABOR AND SUBJECTED OTHER LAW-ABIDING EMPLOYERS TO UNFAIR COMPETITION

27. As a result of the forgoing illegal conduct, Defendants unfairly profited by their use of oppressive child labor. Consumers throughout the United States unknowingly

purchased automobiles that were manufactured with oppressive child labor. Defendants profited by these sales, and financial transactions related to same, and continue to retain those profits today.

28.     Defendants also subjected other law-abiding employers to unfair competition by their use of oppressive child labor. Vulnerable employees, such as children, work for less money, they are less likely to complain about working conditions, less likely to organize, and they are less likely to assert rights in the workplace. Defendants' exploitation here prejudiced other law-abiding employers and gave Defendants an unfair advantage in the marketplace.

## **PRAYER FOR RELIEF**

WHEREFORE, cause having been shown, the Acting Secretary respectfully requests that the Court enter judgment against Defendants and provide the following relief:

A.    Issue an order permanently enjoining and restraining the Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with them, from violating the provisions of Section 12(a) of the Act, 29 U.S.C. § 212(a);

B.    Issue an order permanently enjoining and restraining the Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with them, from violating the provisions of Section 12(c) of the Act, 29 U.S.C. § 212(c); and

      C.    Issue an order awarding the Acting Secretary with any other relief the Court deems necessary and appropriate, including costs of this action.

          Respectfully submitted,

          SEEMA NANDA
          Solicitor of Labor

POST OFFICE ADDRESS:      TREMELLE I. HOWARD
          Regional Solicitor

Office of the Solicitor
U. S. Department of Labor      SCHEAN G. BELTON
618 Church Street, Suite 230      Associate Regional Solicitor
Nashville, Tennessee 37219
Telephone: 615/781-5330      MATT S. SHEPHERD
*nash.fedcourt@dol.gov*      Counsel for Wage and Hour
*motzny.thomas.j@dol.gov*
*forbes.kristin.a@dol.gov*      /s/ Thomas J. Motzny
          THOMAS J. MOTZNY
          KRISTIN A. FORBES
          Trial Attorneys

          U. S. Department of Labor
          Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I certify that on September 23, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all persons indicated on the electronic filing receipt.

/s/ Thomas J. Motzny
THOMAS J. MOTZNY
Trial Attorney