UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

| | | |
|---|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:24-cv-00325-ECM-SMD |
| v. | ) ) | |
| HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC, SMART ALABAMA, LLC, and BEST PRACTICE SERVICE, LLC, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO SMART ALABAMA, LLC'S MOTION TO DISMISS**

The Plaintiff, Julie A. Su, the Acting Secretary of Labor, U.S. Department of Labor, (the "Acting Secretary") in response to SMART Alabama, LLC's (hereinafter "SMART") Motion to Dismiss, states as follows:

I. **Introduction**

Along with Hyundai Motor Manufacturing Alabama, LLC ("HMMA") and Best Practice Service, LLC ("BPS"), SMART, too, disclaims any responsibility for using oppressive child labor. SMART's arguments are similar to those made by HMMA, with only slight differences. The desired result is entirely the same, though— a free pass for the employment of a middle-school aged child in a dangerous occupation. Since the arguments made by the HMMA and SMART are similar, the Acting Secretary incorporates by reference the response filed to HMMA's motion, and addresses any new arguments made by SMART below.

II.     **Argument**

A.      **Acting Secretary Has the Authority to Bring this Action.**

The Acting Secretary has fully briefed this argument in her response to HMMA's Motion to Dismiss in Section II.D. Those arguments are incorporated by reference here.

B.      **The Complaint alleges facts sufficient to state a claim for violations of Section 212(a) and (c) of the FLSA, 29 U.S.C. §§ 212(a), (c).**

SMART makes many of the same arguments about pleading knowledge that HMMA made in its motion to dismiss. The Acting Secretary has addressed those arguments in her response to HMMA's Motion in Section II.B. and incorporates those arguments by reference here. Additionally, SMART cites to a recent district court case from the Northern District of Alabama, *Su v. Mar-Jac Poultry of Alabama*, 6:24-cv-00569-LC, 2024 WL 3278954 (N.D. Ala July 2, 2024), involving the Acting Secretary. Several factors distinguish the procedural posture of that case from the case at bar. Most notably, *Mar-Jac Poultry* concerns a temporary restraining order and preliminary injunction, not, as here, a motion to dismiss. *Id*. at *1.

In addition, SMART claims that *Mar-Jac Poultry* stands for the proposition that an employer cannot take an employee's "appearance and mannerisms" into consideration when evaluating their age. SMART's Memorandum, ECF No. 19, at 10. SMART writes:

> In holding, the [*Mar-Jac Poultry*] court noted the slippery slope of such an argument 'there are many people who appear younger than their age, and Plaintiff's 'appearance and mannerisms' test would unfairly affect those individuals' employment opportunities, essentially discriminating against those individuals on the basis of appearance. Likewise, here, to establish that engagement alone establishes the requisite mental state for child labor claims, forces SMART to engage in speculation and expose itself to discrimination claims contrary to the spirit of federal discrimination statutes.

*Id*. at 11 (quoting *Mar-Jac Poultry*, 2024 WL 3278954 at *3)

2

First *Mar-Jac Poultry*, itself, does not foreclose an employer from taking into consideration an employee's appearance and mannerisms. The *Mar-Jac Poultry* court writes, "Perhaps if the minors were much younger children [than those that worked at Mar-Jac], appearance and mannerisms could signal minority." *Mar-Jac Poultry*, 2024 WL 3278954 at *3. *Mar-Jac Poultry* does not otherwise note the age of the workers at issue, except to say that five workers were under the age of eighteen and one had turned 18 seven days prior to the inspection by the Department of Labor. *Id*. at *1. In this case, EC, the minor at issue, was, at the time of the termination of her employment, just 13-years old. This seems to be exactly the case the judge in *Mar-Jac Poultry* said was appropriate to rely upon appearance and mannerisms.

In addition, SMART's own actions show they could have done more prior to EC's discovery to prevent child labor at their facility. Indeed, two other individuals were dismissed from SMART's plant "due to their appearance and other physical characteristics, which suggested they were also underage," Complaint, ECF No. 1, ¶ 12, after EC was discovered at the facility. Acknowledging this fact, SMART argues in its motion to dismiss:

> The Acting Secretary asserts that Paragraph 12 [of the Complaint] supports other incidents of child labor violations. Such assertion is contrary to common sense. (Doc. 1 at ¶ 12.) Rather, this allegation supports that SMART, after being placed on notice of a staffing company's potential violation of law and SMART's policies and practices, took **a proactive role in mitigating the chances of another alleged violation** or even the perception of unlawful child labor at its facility.

SMART Memorandum, ECF No. 19, at 23, fn. 16 (emphasis added). The parties will have to, respectfully, disagree about the meaning of "proactive," as SMART was only spurred to action after the discovery of a child at its facility. And, rather than "mitigating" the "chances" of another violation, the truth is much grimmer: SMART suspected that they had additional oppressive child labor violations and dismissed the children before law enforcement found them.

3

One of two things can be true, neither of which are favorable to SMART's claims of innocence: either the two individuals dismissed post-EC displayed obvious signs of being underage and SMART took no action until law enforcement was involved, **or** SMART knew the entire time that the individuals were underage and only acted once law enforcement became involved because of EC. While SMART tries to portray this as taking action to prevent "even the perception of unlawful child labor at its facility," SMART Memorandum, ECF No. 19, at 23, fn. 16, this contention directly contradicts SMART's purported claim to fear of "expos[ing] itself to discrimination claims contrary to the spirit of federal discrimination statutes." *Id.* at 11. It seems that SMART could prevent minors from working in its facilities when it wanted to do so. In this case, SMART clearly had the "opportunity through reasonable diligence to acquire knowledge" that some of the workers in its factory were underage. *See Reich v. Dept. of Cons. and Nat. Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994).

      **C.**    **Child Labor Violations Are Not Subject to the Statute of Limitations in 29 U.S.C. § 255.**

The Acting Secretary's arguments related to the statute of limitations are addressed in the response to HMMA's Motion to Dismiss. Section II.C. Those arguments are incorporated by reference here. In addition to the cases cited by HMMA, SMART cites *Hodgson v. Cactus Craft of Arizona*, 481 F.2d 464 (9th Cir. 1973) for the proposition that the Ninth Circuit applies the statute of limitations in Section 255 to child labor violations. This is not accurate. In *Cactus Craft*, the Secretary of Labor sued a manufacturer of novelty cactus lamps and other souvenirs for violations of the minimum wage, overtime compensation, child labor, record keeping and shipping provisions of the FLSA. *Id.* at 464. Although the Ninth Circuit does cite to *Cactus Craft*'s contention that the two-year, rather than the three-year, statute of limitation in Section 255, 29 U.S.C. § 255, should apply, the opinion is unclear whether or not that statute of limitations applies

4

to the minimum wage and overtime violations or to the child labor violations. *Id.* at 467. The resolution of that question does not matter to the outcome, either, as the Ninth Circuit affirmed a finding that the violations were willful, thus applying the three-year statute. *Id*.

Compounding this confusion, the district court's opinion makes no reference to whether the child labor violation occurred within two or three years of the Secretary filing suit. *See Hodgson v. Cactus Craft of Arizona*, No. 69-203-TUC, 1970 WL 729 (D. Ariz. Sept. 30, 1970). Very little is said of the child labor violation in that opinion, as well: "One minor under 18 years of age was engaged in the operation of power driven machinery." *Id.* at *2. The court found this employment violated Sections 12(c) and 15(a)(4) of the FLSA, 29 U. S. C. 212(c) and 215(a)(4)). *Id.* at *3. No reference, however, was made to when the prohibited work occurred.

Next, SMART argues that "the Acting Secretary can prove no set of facts that the alleged violations were willful." SMART's Memorandum, ECF No. 43, at 43. Surely, at the pleading stage, SMART cannot reasonably contend that <u>no</u> set of facts would support its own willful violation of the child labor laws. As stated above, SMART was able to locate two additional minors in its facility shortly after EC's dismissal. Perhaps the facts *could* show that SMART's conduct was not willful but that conclusion, given the facts set forth in the Complaint, is far from inescapable. That question, though, is entirely academic because the statute of limitations contained in Section 255 does not apply to the relief sought here.

### D. The Acting Secretary Has Standing to Seek Prospective Injunctive Relief.

In its supporting Memorandum, SMART makes, in essence, the same argument that HMMA makes regarding the prospective injunctive. Memorandum, ECF No. 43, at 16. The Acting Secretary incorporates her response to that argument, made in Section II.A. of her brief. To the extent there is any difference, SMART's argument is largely self-defeating. After EC was

5

discovered at the SMART facility, SMART acknowledges that it dismissed two other employees:

> The Acting Secretary asserts that Paragraph 12 supports other incidents of child labor violations. Such assertion is contrary to common sense. (Doc. 37 at ¶ 14.) Rather, this allegation supports that SMART, after being placed on notice of a staffing company's potential violation of law and SMART's policies and practices, took a proactive role in mitigating the chances of another alleged violation or even the perception of unlawful child labor at its facility.

ECF No. 43 at 16, n. 10. SMART thinks too much of its own conduct—after having come under the direct scrutiny of law enforcement, SMART seems to admit that it was able to find additional minors at its facility. To make this discovery, SMART apparently relied on the individuals "youthful appearance and physical characteristics, which strongly indicated that they were underage."[1] First Amended Complaint, ECF No. 36, at ¶. 14. Left entirely unsaid is why these individuals' appearances was no indication before EC was discovered.

Prior to EC's discovery, SMART did nothing to verify the age of its workforce, relying on staffing agencies, such as BPS. First Amended Complaint, ECF No. 37, ¶ 12. If that policy has since changed, such changes are not in the record.

---

[1] The Acting Secretary is relying on information gathered from SMART following EC's discovery for this point. SMART, in its moving papers, seeks to sow doubt about whether these two individuals were underage, but SMART would have no reason to terminate of-age workers who were youthful looking.

6

### III. Conclusion

For the forgoing reasons, SMART's motion should be denied. The Acting Secretary has authority to bring this action; she has adequately pled violations of the FLSA; the violations are not time barred; and she has standing to seek a prospective injunction.

          Respectfully submitted,

          SEEMA NANDA
          Solicitor of Labor

POST OFFICE ADDRESS:          TREMELLE I. HOWARD
          Regional Solicitor

Office of the Solicitor
U. S. Department of Labor          SCHEAN G. BELTON
618 Church Street, Suite 230          Associate Regional Solicitor
Nashville, Tennessee 37219
Telephone: 615/781-5330          MATT S. SHEPHERD
nash.fedcourt@dol.gov          Counsel for Wage and Hour
motzny.thomas.j@dol.gov
forbes.kristin.a@dol.gov          /s/ Thomas J. Motzny
          THOMAS J. MOTZNY
          KRISTIN A. FORBES
          Trial Attorneys

          U. S. Department of Labor
          Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I certify that on October 29, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all persons indicated on the electronic filing receipt.

/s/ Thomas J. Motzny
THOMAS J. MOTZNY
Trial Attorney
