IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VINCENT N. MICONE, III,[1] | ) | |
| *Acting Sec'y of Labor*, | ) | |
| *United States Department of Labor*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-cv-325-ECM-SMD |
| | ) | |
| HYUNDAI MOTOR | ) | |
| MANUFACTURING ALABAMA, | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

On May 30, 2024, Julie Su ("Su"), then Acting Secretary of the Department of Labor (the "Acting Secretary"), filed this lawsuit against Defendants Hyundai Motor Manufacturing Alabama, LLC ("HMMA"), Smart Alabama, LLC ("SMART"), and Best Practice Service, LLC ("BPS") (collectively, "Defendants"), seeking injunctive relief for alleged child-labor law violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 212(a), (c). Compl. (Doc. 1). After Defendants moved to dismiss the complaint, Su voluntarily amended. *See* Am. Compl. (Doc. 37). Defendants now move to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, to strike certain allegations therein. *See* Mots. (Docs. 39, 41, and 42). For the following reasons, Defendants' motions should be denied in their entirety.

---

[1] On January 21, 2025, Vincent Micone, III, was appointed as the Acting Secretary for the Department of Labor. Thus, the Court substitutes Micone for his predecessor, Julie Su. *See* FED. R. CIV. P. 25(d)(1).

## I.   JURISDICTION

This Court has federal question jurisdiction over the amended complaint because FLSA claims arise under federal law. *See* 28 U.S.C. § 1331. It also has jurisdiction under 28 U.S.C. § 1345 because this is an enforcement action commenced by an agency of the United States.

## II.   FACTUAL ALLEGATIONS

HMMA manufactures automobiles. Am. Compl. (Doc. 37) p. 2. SMART operates a facility that manufactures component parts, such as body panels, for HMMA. *Id*. BPS, which is no longer in business, is a staffing agency that supplied labor to SMART and HMMA. *Id*.

From July 11, 2021, through February 1, 2022, BPS employed "EC," a thirteen-year-old girl, who it supplied to work at the SMART facility. *Id*. at 3. EC began working at SMART under the name "E***** L*****." *Id*. at 5. When documents showing this name were rejected, EC presented new documents with the name "J***** O*****." *Id*. While working at SMART, EC's name badge said "E***** L*****" although she was paid under the name "J***** O*****." *Id*. EC's "appearance and physical characteristics [] suggested that she was very young." *Id*.

EC worked up to 50-60 hours per week on an assembly line, operating machines that formed sheets of metal into body parts for cars for HMMA. *Id*. at 4. One day, EC failed to come home from work, leading her father to contact the police. *Id*. at 5. The subsequent police investigation triggered an AMBER alert, and EC was located in Georgia with an adult male coworker from SMART. *Id*. Upon the Acting Secretary's information and

belief, other minors—who are believed to be EC's siblings—were also employed by SMART and BPS during the same timeframe as EC. *Id*. at 5-6.

## III.    CLAIMS

The Acting Secretary brings claims against Defendants for child-labor law violations under §§ 212(a) and (c) of the FLSA.

Section 212(a), known as the "hot goods" prohibition, prevents producers, manufacturers, and dealers from shipping or delivering any goods produced in an establishment where, within thirty days prior to the removal of such goods from the establishment, any oppressive child labor[2] has been employed. 29 U.S.C. § 212(a).

Section 212(c) prohibits businesses from employing oppressive child labor in commerce or in the production of goods for commerce. *Id*. at § 212(c).

## IV.    LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) permits dismissal of an action for lack of subject-matter jurisdiction due to lack of Article III standing. *PDVSA US Litig. Trust v. Lukoil Pan Ams., LLC*, 991 F.3d 1187, 1190 (11th Cir. 2021). A defendant may use Rule 12(b)(1) to attack subject-matter jurisdiction in two ways: facially or factually.

---

[2] Oppressive child labor is defined as "a condition of employment under which (1) any employee under the age of sixteen years is employed by an employer . . . in any occupation, or (2) any employee between the ages of sixteen and eighteen years is employed by an employer in any [particularly hazardous] occupation[.]" 29 U.S.C. § 203(l). However, "the employment of employees between the ages of fourteen and sixteen years in occupations other than manufacturing and mining shall not be deemed to constitute oppressive child labor if and to the extent that . . . such employment is confined to periods which will not interfere with their schooling and to conditions which will not interfere with their health and well-being." *Id*.

*Murphy v. Sec'y, U.S. Dep't of the Army*, 769 F. App'x 779, 781 (11th Cir. 2019). Here, Defendants lodge a facial attack on the Court's subject matter jurisdiction. "Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." *Id.*

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations sufficient "to raise a right to relief beyond the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Twombly*, 556 U.S. at 555). Instead, complaints must contain "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n. 2 (11th Cir. 2010) (internal quotation and citation omitted).

To determine whether a plaintiff has stated a claim, a court should first "eliminate any allegations in the complaint that are merely legal conclusions" and then determine whether the well-pleaded factual allegations of the complaint—assuming their veracity— plausibly give rise to relief. *Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal quotation and citation omitted). "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant

4

is liable for the misconduct alleged.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). Thus, the plausibility standard for a motion to dismiss "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Indeed, "the standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309-10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545).

## V.    ANALYSIS

Defendants move to dismiss the Acting Secretary's amended complaint for the following reasons:

A) The Acting Secretary lacks Article III standing to seek prospective injunctive relief.

B) Su, as Acting Secretary of the Department of Labor, was not statutorily authorized to file suit and lacked a sufficient stake in the litigation to satisfy Article III standing.

C) The Acting Secretary fails to plead Defendants' requisite mental state under § 212(c) of the FLSA.

D) The FLSA claims are time barred.

HMMA Br. (Doc. 40); HMMA Supp. Br. (Doc. 54); BPS Mot. (Doc. 41); SMART Br. (Doc. 43); SMART Supp. Br. (Doc. 57). The undersigned addresses each argument in turn.

### A. Whether the Acting Secretary has Article III standing to seek prospective injunctive relief.

Defendants argue that the Acting Secretary lacks Article III standing to seek prospective injunctive relief because the amended complaint does not allege facts showing

a sufficient likelihood that future injury will occur. HMMA Br. (Doc. 40) pp. 14-16; BPS Mot. (Doc. 41) p. 2; SMART Br. (Doc. 43) pp. 14-17. Specifically, Defendants contend that the amended complaint indicates that the alleged child-labor law violations ceased by February 1, 2022, and that there are no allegations that any minor currently works for or is seeking employment from Defendants. HMMA Br. (Doc. 40) p. 15. Additionally, Defendants claim that they do not possess any "hot goods" that might otherwise enter the stream of commerce and thus violate the FLSA. *Id*. Further, BPS asserts that it is no longer in business and therefore poses no threat that it will violate the FLSA in the future. BPS Mot. (Doc. 41) p. 2. Finally, SMART contends that the amended complaint does not allege that it is unwilling to comply with the FLSA, thus negating the risk of future violations. SMART Br. (Doc. 43) pp. 14-16. For these reasons, Defendants argue that the amended complaint fails to show a likelihood of future injury sufficient to afford the Acting Secretary with Article III standing to seek prospective injunctive relief.

Standing to bring suit is a fundamental component of a federal court's subject matter jurisdiction. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Because Article III standing implicates a court's subject matter jurisdiction, it must be addressed prior to examining the merits of any underlying claims. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015). "Typically, where standing is lacking, a court must dismiss the plaintiff's claim without prejudice." *McGee v. Solic. Gen. of Richmond Cnty., Ga.*, 727 F.3d 1322, 1326 (11th Cir. 2013).

To establish standing, a plaintiff must show "(1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the

injury will be redressed by a favorable decision." *L.M.P. on behalf of E.P. v. Sch. Bd. of Broward Cnty., Fla.*, 879 F.3d 1274, 1281 (11th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Injury-in-fact is an injury that is "concrete and particularized and actual or imminent[.]" *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023) (citing *Lujan*, 504 U.S. at 560-61). Article III injury-in-fact "requires an additional showing when injunctive relief is sought." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). In addition to past injury, a plaintiff seeking prospective injunctive relief "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Wooden v. Bd. of Regents of Univ. Sys. Of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001). Because injunctions regulate future conduct, "a party has standing to seek injunctive relief only if the party shows 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.'" *Houston*, 733 F.3d at 1329 (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)).

Notwithstanding these general principles, the FLSA affords the Secretary of Labor the right to seek injunctive relief for child-labor law violations. 29 U.S.C. §§ 212(a), (c), 217. Injunctive relief is authorized "when an employer has committed a clear violation of the [FLSA] without valid excuse or explanation," *Shultz v. Salinas*, 416 F.2d 412, 414 (5th Cir. 1969),[3] and can be proper even when the employer is currently complying with the

---

[3] *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

FLSA, *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975).[4] Indeed, "[w]here the Secretary has established violations of the [FLSA], the district court should ordinarily grant injunctive relief, even if the employer is in present compliance, unless the district court is soundly convinced that there is no reasonable probability of a recurrence of the violations." *Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980). In determining whether an injunction should issue, a court may consider, *inter alia*, the prior conduct of the employer and the dependability of the employer's promises for future FLSA compliance. *Dunlop*, 524 F.2d at 1281.

Importantly, "[t]he purpose of issuing an injunction against future violations [of the FLSA] is to effectuate general compliance with the Congressional policy of abolishing substandard labor conditions by preventing recurring future violations." *Martin v. Funtime, Inc.*, 963 F.2d 110, 113 (6th Cir. 1992). An injunction under the FLSA is remedial—not punitive, *id*. at 114—and does not impose a hardship on the employer "since it requires him to do 'what the [FLSA] requires anyway—to comply with the law,'"[5] *Dunlop*, 524 F.2d at 1281 (quoting *Mitchell v. Pidcock*, 299 F.2d 281, 287 (5th Cir. 1962)). FLSA

---

[4] ("[C]urrent compliance . . . is no bar to prospective injunctive relief . . . especially where compliance is achieved only by the direct scrutiny of enforcement authorities."); *see also Herman v. Brewah Cab, Inc*., 992 F. Supp. 1054, 1060 (E.D. Wisc. 1998) ("An injunction can be granted under the FLSA if the Secretary of Labor has established violations of the statute.").

[5] The Eleventh Circuit recognizes that an injunction ordering a defendant to comply with a statute may be appropriate where the statute is sufficiently specific as to its requirements. *SEC v. Goble*, 682 F.3d 934, 950 (11th Cir. 2012) (discussing the injunction to obey the minimum wage, overtime, and record keeping provisions of the FLSA issued in *McComb v. Jacksonville Paper Co*., 336 U.S. 187, 191-95 (1949) and its permissibility under Rule 65(d) because the terms of the FLSA were relatively specific). The former Fifth Circuit holds that FLSA injunctions "may be sufficiently broad and general to enjoin any practices which constitute violations of the Act's provisions" (applied specifically to provisions dealing with minimum wages, overtime and the keeping of record) as such "[d]ecrees of generality are often necessary to prevent future violations." *Wirtz v. Ocala Gas Co*., 336 F.2d 236, 240 (5th Cir. 1964).

injunctions place the cost of future noncompliance on the employer, which lessens the responsibility of the Labor Department's Wage and Hour Division in investigating future violations. *Martin*, 963 F.2d at 113-14.

Here, the Acting Secretary alleges that Defendants permitted a thirteen-year-old girl—and possibly other minors—to work in a hazardous occupation for more than six months. Critically, the amended complaint asserts that EC's employment continued until she crossed state lines with an adult male co-worker, which triggered a police investigation and AMBER alert. These allegations reasonably suggest that EC's illegal employment went unaddressed, undetected, and/or ignored by Defendants until intervening circumstances exposed the FLSA violations. And although the amended complaint does not allege that FLSA violations are ongoing, it is silent as to any promises made or safeguards implemented by Defendants to ensure that child-labor law violations do not recur. Thus, under these circumstances, a real and immediate threat of future injury to underage workers and the public generally remains, and that threat is sufficient to satisfy Article III's injury-in-fact requirement. *See Hugler v. Dominion Granite Marble, LLC*, 2017 WL 2671300, at *2 (E.D. Va. June 21, 2017) (finding there was "some cognizable danger of recurrent violation, something more than the mere possibility" where the complaint alleged that the defendant willfully violated the FLSA over a period of three years; complied only after being caught; and did not provide any reasonable assurances of future compliance).

To be sure, Defendants' current FLSA compliance—coupled their willingness to comply in the future, BPS's defunct business status, and a lack of evidence that minors are

seeking their employment—may ultimately weigh against granting injunctive relief. However, such a determination should be made on a fully developed factual record[6] and should not be prematurely decided by conflating the merits of injunctive relief with the Acting Secretary's Article III standing to seek such relief. Indeed, based on a fully developed factual record, courts have granted FLSA injunctive relief under circumstances similar to those alleged in the amended complaint,[7] which further buttresses the Acting Secretary's standing.[8] Defendants have not cited any cases holding otherwise.

Therefore, because the amended complaint alleges facts sufficient to show a real and immediate threat of future injury, Defendants' motions to dismiss the amended complaint for lack of Article III standing should be denied.

---

[6] Whether FLSA injunctive relief is appropriate is a fact specific inquiry that cannot be determined at the motion to dismiss stage. *See Chao v. Va. Dep't of Transp*., 157 F. Supp. 2d 681, 691 (E.D. Va. 2001) (finding that "the issuance of a prospective injunction [under the FLSA] depends on findings of fact which cannot be made in deciding [a motion to dismiss]").

[7] *See Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987) (reversing a district court that denied injunctive relief based on a lack of evidence of continuing violations that made no findings as to whether, *inter alia*, the employer had instituted procedures to ensure future compliance); *Herman*, 992 F. Supp. at 1060 (issuing injunctive relief where defendants were in current compliance with the FLSA, which was initiated only after the government investigated the violations); *Solis v. A-1 Mortg. Corp*., 934 F. Supp. 2d 778, p (W.D. Pa. 2013) (issuing injunctive relief against defendant based on repeated prior violations even though defendant no longer had a connection to his company, which was bankrupt and defunct).

[8] *See Va. Dep't of Transp.*, 157 F. Supp. 2d at 691 (because injunctive relief "can issue in the face of [an employer's] current compliance [with the FLSA], it follows that a complaint for a prospective injunction under the FLSA need not allege a present violation in order for [this Court] to have jurisdiction"); *Wirtz v. Young Elec. Sign Co*., 315 F.2d 326, 328 (10th Cir. 1963) (Tenth Circuit vacating district court's *sua sponte* dismissal of an FLSA action seeking prospective injunctive relief in which the plaintiff had no evidence of violations occurring at the time the complaint was filed and no proof of a present intent to violate the FLSA in the future).

**B. Whether Su, as Acting Secretary of the Department of Labor, was statutorily authorized to file suit and whether she lacked a sufficient stake in the litigation to satisfy Article III standing.**

Defendants challenge Su's authority as Acting Secretary to bring this suit. In their original motions to dismiss, Defendants argue that 29 U.S.C. § 552—which provides the statutory authority for the Deputy Secretary of the Department of Labor (the "Deputy Secretary") to perform the duties of the Secretary in the Secretary's absence—is unconstitutional on its face because it does not provide a temporal limitation for acting service and thus violates the Appointments Clause. HMMA Br. (Doc. 40) pp. 23-38; BPS Mot. (Doc. 41) p. 1; SMART Br. (Doc. 43) pp. 3-6. They further contend that the statute is unconstitutional as applied here because "[w]hatever time period of service might be deemed constitutionally acceptable, Su's service plainly exceeded it." HMMA Br. (Doc. 40) p. 29. Therefore, as a result of Su's purportedly unconstitutional service as Acting Secretary, Defendants argue that she lacked standing to seek injunctive relief on behalf of the Department of Labor under 29 U.S.C. § 217, which affords that authority solely to the Secretary. HMMA Br. (Doc. 40) pp. 31-34.

While Defendants' motions to dismiss were pending, a new Acting Secretary was named. HMMA and SMART then filed supplemental motions, arguing that the substitution of the new Acting Secretary does not "moot the issue . . . related to the Appointments Clause." HMMA Memo (Doc. 54); SMART Memo (Doc. 57). They also raise a new challenge to this Court's subject matter jurisdiction, arguing that Su lacked a sufficient stake in the litigation to afford her Article III standing to assert the FLSA claims. HMMA

Memo (Doc. 54) pp. 6-8; SMART Memo (Doc. 57) p. 2. As explained below, Defendants'
arguments—presented in their original and supplemental motions—fail.

### 1.    Whether § 552 is unconstitutional.

The Appointments Clause of the United States Constitution grants the President the
power, "by and with the advice and consent of the Senate," to "appoint . . . Officers of the
United States." U.S. Const. art. II § 2, cl. 2. The Secretary of the Department of Labor is
an Officer of the United States that falls within this statute who must be appointed by the
President and confirmed by the Senate.

Separately, per statute, the Deputy Secretary is appointed by the President "by and
with the advice and consent of the Senate." 29 U.S.C. § 552. In case of the Secretary's
"death, resignation, or removal from office," the Deputy Secretary is authorized to
"perform the duties of the Secretary until a successor is appointed," or in the case of the
Secretary's "absence or sickness . . . perform the duties of the Secretary until such absence
or sickness shall terminate." *Id*.

Defendants argue that § 552 violates the Appointments Clause because it does not
include a temporal limitation for the Deputy Secretary's service as Acting Secretary.
HMMA Br. (Doc. 40) p. 27. They argue that because § 552 does not limit the time that an
acting secretary can serve, a president could appoint an acting secretary, who could serve
in that role indefinitely and thereby circumvent the Appointments Clause's requirement
that the Secretary be appointed "with the advice and consent of the Senate." *Id*. Because of
this purported loophole, Defendants argue that § 552 is unconstitutional on its face and as
applied to the facts here. *Id*.

A constitutional challenge to a statute can be brought either as a facial or an as-applied challenge. A party raising a facial challenge must show that a statute is "unconstitutional in all its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). "A facial challenge to a legislative [a]ct is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the [a]ct would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). On the other hand, a party raising an as-applied challenge must show that a statute is unconstitutional because of the way it was applied to the particular facts of that party's case. *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973). If a statute as applied is constitutional, then a facial challenge to that statute automatically fails. *See Salerno*, 481 U.S. at 745.

### a.    As-Applied Challenge

Defendants argue that Su's service as Acting Secretary exceeded the constitutionally acceptable period for temporary service, whatever that period may be. HMMA Br. (Doc. 40) pp. 29-30; BPS Mot. (Doc. 41) p. 1; SMART Br. (Doc. 43) pp. 3-6. Su was confirmed by the Senate as the Deputy Secretary in July 2021, and she began performing the duties of the Secretary after the Secretary resigned in March 2023. *Su v. Starbucks Corp*., 697 F. Supp. 3d 1078, 1082 (W.D. Wash. 2023) (citing PN 122 Nomination of Julie A. Su for Department of Labor, 117th Congress (2021-2022)). She was twice nominated to serve as Secretary, but her nomination was twice returned to the President without a vote. *See* 169 Cong. Rec. S775 (daily ed. Mar. 14, 2023); 170 Cong. Rec. S1 (daily ed. Jan. 3, 2024); 170 Cong. Rec. S18 (daily ed. Jan. 8, 2024). Su filed this

suit approximately fourteen months after she began serving as Acting Secretary, and she was ultimately replaced as Acting Secretary on January 21, 2025.

Defendants' as-applied challenge to § 552 fails because Su was replaced as the Acting Secretary in January 2025, thus unequivocally showing that her service was not indefinite. Further, Defendants have not cited caselaw or made any substantive argument that approximately fourteen months of acting service—the point at which Su filed this suit—automatically runs afoul of the Appointments Clause, nor has the undersigned identified any such authority. Finally, any concern that § 552 is unconstitutional under the circumstances here is mitigated by the fact that during much of Su's acting service, her nomination for Secretary was pending before the Senate. The Senate did not reject her nomination. Instead, it did not vote and returned the nomination to the President, who re-nominated her, thus showing that Su's service was not the President's attempt to circumvent the Appointments Clause by permitting her indefinite service. Therefore, because Su's service as Acting Secretary comports with the Appointments Clause, Defendants' as-applied constitutional challenge to § 552 fails.

### b.    Facial Challenge[9]

Defendants argue that § 552 is unconstitutional on its face because it does not impose a temporal limitation on the amount of time the Deputy Secretary can perform the

---

[9] Because Defendants' as-applied challenge fails, their facial challenge necessarily fails. However, should this Court find that the as-applied challenge succeeds, the undersigned examines Defendants' facial challenge to determine if the statute is unconstitutional as to all applications.

duties of the Secretary, thus violating the Appointments Clause. HMMA Br. (Doc. 40) pp. 29-30; BPS Mot. (Doc. 41) p. 1; SMART Br. (Doc. 43) pp. 3-6.

The plain language of § 552 imposes a temporal limitation on a Deputy Secretary's ability to serve as Acting Secretary, albeit one without a fixed time frame. Indeed, § 552 provides that a Deputy Secretary may perform the duties of the Secretary until a new Secretary is appointed or, in the case where the Deputy Secretary began service because of a temporary limiting condition of the Secretary, when the limiting condition ends. 29 U.S.C. § 552. Thus, while § 552 does not provide a specific date or fixed length of time that the Deputy Secretary can serve, it nonetheless restricts that service to a temporary period.[10] Therefore, because § 552 does not permit indefinite service of the Acting Secretary, it does not violate the Appointments Clause on its face.

### 2.    Whether Su, as Acting Secretary, had statutory authority to file suit under 29 U.S.C. § 217.

Under 29 U.S.C. § 217, the FLSA affords the Secretary the authority to seek injunctive relief to restrain violations of child-labor laws. 29 U.S.C. § 217. Section 552 permits the Acting Secretary to "perform the duties of the Secretary." *Id*. § 552. Having found that § 552 does not violate the Appointments Clause, Su, who was Acting Secretary at the time this suit was filed, had the requisite statutory authority to commence this

---

[10] *See Morrison v. Olson*, 487 U.S. 654, 672 (finding that independent counsel to the Attorney General's office is "limited in tenure" even without a "time limit on the appointment" because the appointment is for a single task and, when that task is over, the office is terminated); *Trump v. Hawaii III*, 585 U.S. 667, 687 (2018) (finding a temporal limitation when there is a link between the suspension "implicitly or explicitly, to the resolution of the triggering condition"); *but see Doe #1 v. Trump*, 957 F.3d 1050, 1065 (9th Cir. 2020) (finding that a presidential proclamation likely did not comport with a statute imposing temporal limitations when the proclamation "had no fixed end date and failed to tie the suspension to any resolvable, triggering event or condition").

litigation on behalf of the Department of Labor and seek injunctive relief under § 217. *See Su v. WiCare Home Care Agency, LLC*, 2024 WL 3598826, at *17 (M.D. Penn. July 31, 2024) (holding that Acting Secretary Su's service under the statute is lawful and that she could properly bring FLSA enforcement actions).

### 3. Whether Su, as Acting Secretary, had a sufficient stake in the litigation to have Article III standing to file suit.

Defendants HMMA and SMART argue that Su, in her role as Acting Secretary, lacked the requisite "personal stake" in the litigation necessary to establish Article III standing. HMMA Supp. Br. (Doc. 54); SMART Supp. Br. (Doc. 57). Specifically, HMMA and SMART contend that because "Su was not constitutionally permitted to serve as Acting Secretary," she was not affected in a personal and individual way by the FLSA violations, and thus resembles a "mere bystander" to the litigation. HMMA Supp. Br. (Doc. 54) pp. 7-8. Therefore, HMMA and SMART argue that Su lacked Article III standing when she filed suit, which divests this Court of subject matter jurisdiction to hear the case. *Id.*; SMART Supp. Br. (Doc. 57) pp. 1-2.

As addressed *supra*, § 552 does not violate the Appointments Clause. Therefore, Su's service as Acting Secretary was lawful, and she had the authority to file suit on behalf of the Department of Labor under § 217 for child-labor law violations. As Su was authorized to perform the duties of the Secretary, she was more than a mere bystander and possessed the requisite "personal stake" in the litigation to satisfy Article III standing.

Therefore, to the extent HMMA and SMART move to dismiss the amended complaint for lack of Article III standing, the motions should be denied.[11]

### C. Whether the Acting Secretary sufficiently pleaded Defendants' requisite mental state under § 212(c).[12]

Defendants contend that the Acting Secretary fails to allege sufficient facts to show that they "knew or should have known that an underage worker was engaged in prohibited work," which is required to state a claim under § 212(c). HMMA Br. (Doc. 40) pp. 16-19; BPS Mot. (Doc. 41) pp. 2-4; SMART Br. (Doc. 43) pp. 7-12. As such, they request dismissal of the claim.

In the amended complaint, the Acting Secretary alleges that thirteen-year-old EC— and possibly other minors—worked 50-to-60-hour weekly shifts at the SMART facility for approximately six months. Am. Compl. (Doc. 37) pp. 4, 5. The Acting Secretary asserts that EC began working at SMART under one name but when documents bearing that name were rejected, she presented documents with a new name. *Id*. at 5. Notably, while working at SMART, EC's badge reflected the original name, and her hours were reported from SMART to BPS under the same. *Id*. However, BPS paid EC under the new name, an identity BPS knew to be an alias. *Id*.

---

[11] In any event, unlawful service under Article II does not nullify Article III jurisdiction. *See Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1190 (9th Cir. 2016) ("[N]o court, including the Supreme Court, has ever suggested that Article II problems nullify Article III jurisdiction."); *id*. ("While the failure to have a properly confirmed director may raise Article II Appointments Clause issues, it does not implicate our Article III jurisdiction to hear this case.").

[12] Defendants do not move to dismiss the Acting Secretary's § 212(a) "hot goods" claim pursuant to this argument. *See generally* HMMA Br. (Doc. 40); BPS Mot. (Doc. 41); SMART Br. (Doc. 43).

Additionally, the Acting Secretary alleges that EC's "appearance and physical characteristics" suggested that she was "very young." *Id*. The Acting Secretary asserts that SMART did not take any independent action—including basic age and identity checks— to verify that the temporary workers it employed through BPS were of legal working age. *Id*. And when EC's underage status was discovered (through no proactive measure by any Defendant), SMART informed BPS that two other employees were no longer permitted to return to the SMART facility "due to their youthful appearance and physical characteristics[.]" *Id*. at 5-6.

As for HMMA, the Acting Secretary alleges that, by virtue of HMMA's relationship with SMART,[13] it "indirectly controlled and supervised the minor employee(s); retained the right to modify the terms and conditions of their employment; and significantly invested in equipment and facilities necessary to their work." *Id*. at 7. Further, the Acting Secretary asserts that HMMA had authority to "conduct its own audit of SMART" and to "unilaterally direct SMART to audit itself, as well as its staffing agencies and contractors, to fully review all employees and assess compliance with applicable child labor laws." *Id*. at 7-8. Thus, the Acting Secretary contends that "HMMA's control over and involvement

---

[13] Employers are jointly and severally liable under the FLSA. *Mills v. Anadolu Agency NA, Inc*., 105 F.4th 388, 399 (D.C. Cir. 2024) ("[I]f two employers are joint employers, the worker's employment is treated as one employment under the FLSA . . . making each employer jointly and severally liable for any violations.") (internal quotations omitted). Here, the Acting Secretary alleges that SMART's manufacturing operations, which were in existence to provide component parts exclusively or nearly exclusively to HMMA, "were so integrated with the business needs of HMMA that the two companies were a single employer for purposes of liability under the FLSA." Am. Compl. (Doc. 37) pp. 7, 8. Alternatively, the Acting Secretary asserts that because HMMA had extensive control over and responsibility for SMART's business operations, HMMA and SMART jointly employed the minor(s), along with BPS. *Id*. at 8. HMMA does not contest that it was a single or joint employer with SMART. *See generally* HMMA Br. (Doc. 40).

in the operations of SMART and its staffing agencies with respect to the employment of children show that HMMA could have detected, prevented, and/or corrected the child labor violations alleged . . . through the exercise of reasonable diligence." *Id*. at 8.

"[A]n employer's knowledge is measured in accordance with his duty . . . to inquire into the conditions prevailing in his business." *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969) (internal quotations omitted). "In reviewing the extent of an employer's awareness [of an FLSA violation], a court need only inquire whether the circumstances were such that the employer either had knowledge or else had the opportunity through reasonable diligence to acquire knowledge" of the violations. *Reich v. Dep't of Cons. & Nat. Res*., 28 F.3d 1076, 1082 (11th Cir. 1994). "The cases must be rare where prohibited work can be done and knowledge or the consequences of knowledge avoided." *Id*.

Here, the Acting Secretary sufficiently alleges the requisite mental state for the § 212(c) claim to proceed against all Defendants. Under the backdrop of the allegation that EC's appearance and physical characteristics suggested that she was "very young," the Acting Secretary alleges that BPS paid EC under a name it knew to be an alias. Construed in the light most favorable to the Acting Secretary, this allegation, at a minimum, places BPS on notice that EC could have been using the alias because she was not old enough to be employed. As for SMART, the Acting Secretary alleges that it terminated two individuals who appeared to be underage soon after EC's underage status was exposed. Construed in the light most favorable to the Acting Secretary, this allegation suggests that SMART had the opportunity through reasonable diligence to acquire knowledge that it was

employing underage workers during EC's employment but did not do so. Finally, as to HMMA, the Acting Secretary alleges that it had the authority to audit SMART and direct SMART to audit itself for potential child-labor law violations. Construed in the light most favorable to the Acting Secretary, these allegations suggest that HMMA had the opportunity through reasonable diligence to acquire knowledge that underage workers were employed at the SMART facility.

In sum, the Acting Secretary alleges facts sufficient to show that Defendants knew or should have known that EC was illegally working at the SMART facility. Accordingly, to the extent Defendants move to dismiss the amended complaint for failure to plead the requisite mental state under § 212(c), their motions should be denied.

### D. Whether the FLSA claims are time barred.

Defendants argue that the FLSA claims are time barred because they were filed more than two years after the cause of action accrued.[14] HMMA Br. (Doc. 40) pp. 20-23; BPS Mot. (Doc. 41) pp. 4-5; SMART Br. (Doc. 43) pp. 12-14. Acknowledging that the FLSA does not explicitly provide an applicable statute of limitations for child-labor law violations, Defendants contend that the Court should borrow the statute of limitations set forth in 29 U.S.C. § 255(a). HMMA Br. (Doc. 40) p. 12; BPS Mot. (Doc. 41) p. 5; SMART

---

[14] All Defendants raise the statute of limitations argument in their motions to dismiss. HMMA Br. (Doc. 40) pp. 20-23; BPS Mot. (Doc. 41) pp. 4-5; SMART Br. (Doc. 43) pp. 12-14. In reply, HMMA withdrew its statute of limitations argument "for present purposes and without waiver of the right to raise the statute-of-limitations argument later in the proceedings[.]" HMMA Reply (Doc. 48) pp. 13-14 n.3. Neither SMART nor BPS make any argument pertaining to the statute of limitations in their replies, but they do not state that they are withdrawing the argument. *See generally* BPS Reply (Doc. 49); SMART Reply (Doc. 51). Therefore, in the event SMART and BPS persist with the statute of limitations argument, the undersigned will examine whether the FLSA claims are time barred.

Br. (Doc. 43) p. 12. That section provides that any action "to enforce any cause of action

for *unpaid minimum wages*, *unpaid overtime compensation*, or *liquidated damages* . . . may

be commenced within two years after the cause of action accrued . . . except that a cause

of action arising out of a willful violation may be commenced within three years after the

cause of action accrued." 29 U.S.C. § 255(a) (emphasis added).

Under the plain language of § 255(a), a two- or three-year statute of limitations

applies to actions for unpaid minimum wages, unpaid overtime compensation, and

liquidated damages. Child-labor law actions are notably absent from the categories of

FLSA cases to which the statute of limitations applies. Of course, had Congress determined

that such a limitations period should apply to child-labor law actions, it could have included

them in § 255(a), but did not. Therefore, instead of borrowing the limitation period from §

255(a) as Defendants urge, the Court should apply the "well-established rule that 'an action

on behalf of the United States in its governmental capacity . . . is subject to no time

limitation, in the absence of congressional enactment clearly imposing it," *E.I. du Pont de

Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924). Under application of this rule, the

FLSA claims are timely. Accordingly, to the extent Defendants move to dismiss the FLSA

claims as time barred, their motions should be denied.[15]

---

[15] Even if the statute of limitations in § 255(a) is applied to child-labor law violations, the Acting Secretary
has pleaded a willful violation of the statute, *see* Am. Compl. (Doc. 37) p. 4, which affords application of
the three-year limitations period, *see United States v. Alvarado*, 5 F.3d 1425, 1427 (11th Cir. 1993) ("[A]ny
statute of limitations sought to be applied against the United States 'must receive a strict construction in
favor of the Government."). Because this suit was filed on May 30, 2024, which is less than three years
after EC's employment was terminated on February 1, 2022, the FLSA claims are timely under a three-year
statute of limitations.

## VI.    MOTIONS TO STRIKE

In the alternative to dismissing the Acting Secretary's claims, HMMA and BPS move the Court to strike portions of the amended complaint that allege "vague, unspecified allegations of additional FLSA violations." HMMA Br. (Doc. 40) p. 34; BPS Mot. (Doc. 41) p. 1. In the amended complaint, the Acting Secretary alleges that

> After EC's underage employment was discovered, SMART informed BPS that two other employees were no longer permitted to return to the facility due to their youthful appearance and physical characteristics, which strongly indicated that they were also underage. These individuals are believed to have been EC's siblings, including her younger brother, and they may have also worked at the SMART plant.

Am. Compl. (Doc. 37) pp. 5-6. HMMA and BPS contend that these allegations should be stricken to avoid the prejudice incurred from the time and expense required to investigate the allegations. HMMA Br. (Doc. 40) p. 38.

Federal Rule of Civil Procedure 12(f) governs motions to strike portions of pleadings that contain "redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The primary purpose of a Rule 12(f) motion to strike is to avoid the unnecessary expenditure of judicial resources and the parties' time and money addressing spurious issues. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010); *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986); *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Although reflective of "the inherent power of the Court to prune down pleadings," *TracFone Wireless, Inc. v. Zip Wireless Prods., Inc.,* 716 F. Supp. 2d 1275, 1290 (N.D. Ga. 2010), motions to strike are drastic, generally

22

disfavored remedies, *EEOC v. Joe Ryan Enters., Inc.,* 281 F.R.D. 660, 662 (M.D. Ala. 2012).

Here, the Acting Secretary's allegations should not be stricken from the amended complaint. Should these allegations ultimately prove true, they could indicate that Defendants' child-labor law violations were/are broader than EC's employment. Such facts would be relevant to determine whether a prospective injunction should be issued. Further, the Acting Secretary's allegations are specific enough to apprise Defendants of the underlying factual basis for the allegations and allow them to investigate without expending unreasonable time and effort. Accordingly, to the extent HMMA and BPS move to strike allegations in the amended complaint as an alternative to dismissal, the motions should be denied.

## VII.    CONCLUSION

Accordingly, it is the

RECOMMENDATION of the undersigned Chief United States Magistrate Judge that Defendants' Motions to Dismiss (Docs. 39, 41, and 42) be DENIED and that HMMA and BPS's Motions to Strike (Docs. 39 and 41) be DENIED. It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before June 10, 2025**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of

23

legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 27th day of May, 2025.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE