IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LORI CHAVEZ-DEREMER,[1] | ) |
| Secretary of Labor, | ) |
| United States Department of Labor, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL CASE NO. 2:24-cv-325-ECM |
| | ) [WO] |
| HYUNDAI MOTOR MANUFACTURING | ) |
| ALABAMA, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Now pending before the Court is Defendant Hyundai Motor Manufacturing Alabama, LLC's ("HMMA") motion to dismiss or in the alternative, motion to strike (doc. 39),[2] Defendant Smart Alabama, LLC's ("SMART") motion to dismiss (doc. 42), and Defendant Best Practice Service, LLC's ("BPS" and, together with HMMA and SMART, "the Defendants") motion to dismiss or in the alternative, motion to strike (doc. 41). On May 27, 2025, the Magistrate Judge entered a Recommendation (doc. 60) in this case and recommended that the motions to dismiss (docs. 39, 41, 42) and HMMA's and

---

[1] Lori Chavez-DeRemer was sworn in on March 11, 2025, as the Secretary of the United States Department of Labor. Secretary Chavez-DeRemer is automatically substituted as a party under Federal Rule of Civil Procedure 25(d). Accordingly, the Clerk of Court is directed to correct the docket to reflect this change.

[2] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

BPS's motions to strike (docs. 39, 41) be denied. HMMA, SMART, and BPS objected to the Magistrate Judge's Recommendation. (*See* docs. 63, 64, 65). Plaintiff Lori Chavez-DeRemer, Secretary of Labor (the "Secretary" or the "Plaintiff"),[3] responded to the Defendants' objections on August 1, 2025. (*See* docs. 68, 69, 70). The Defendants all replied. (*See* docs. 73, 78, 79). Upon review of the Recommendation and all the parties' briefing, the Court concludes that the Recommendation is due to be adopted as modified herein.

## II.   LEGAL STANDARD

### A.   Standard of Review for Recommendation

When a party objects to a magistrate judge's report and recommendation, the district court must review the disputed portions *de novo*. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 674 (1980). The district court "may accept, reject, or modify the recommended disposition; receive further evidence; or resubmit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). Objections must be sufficiently specific to warrant *de novo* review. *See LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988). "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Macort v. Prem, Inc.*, 208

---

[3] While Secretary Chavez-DeRemer is now the Secretary of Labor, Julie Su, who was acting Secretary of Labor at the time the suit was filed, was the original named plaintiff. Her ability to bring this case is a basis for the Defendants' challenge.

2

F. App'x 781, 784 (11th Cir. 2006) (quoting *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005)).[4]

**B.     12(b)(1) Motion to Dismiss**

A Rule 12(b)(1) motion to dismiss challenges the Court's ability to hear a case for lack of subject matter jurisdiction, including a lack of Article III standing. *Cf. Perlman v. PNC Bank, N.A.*, 38 F.4th 899, 903 (11th Cir. 2022). Rule 12(b)(1) motions can present either "facial" or "factual" challenges to subject matter jurisdiction. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). Facial challenges focus on the allegations of the complaint while factual challenges are "irrespective of the pleadings." *Id.* When a defendant makes a facial challenge, as the Defendants do here, "the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

**C.     12(b)(6) Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[4] Here, and elsewhere in this Memorandum Opinion, the Court cites nonbinding authority. While the Court recognizes that these cases are nonprecedential, the Court finds them persuasive.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. BACKGROUND

Because the facts needed to resolve the pending motion go beyond the four corners of the complaint, the Court first outlines the allegations in the complaint[5] before supplementing them with facts concerning Julie Su's ("Su") service as Acting Secretary of Labor during the commencement of this case.[6]

---

[5] The Defendants seek to dismiss the amended complaint (doc. 37), which the Court refers to as "the complaint" throughout this Opinion.

[6] While a Court generally may not go outside the four corners of the complaint in ruling on a motion to dismiss, the Defendants use public records to challenge the Court's jurisdiction to hear the case, arguing that Su lacked authority to bring the case. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x. 52, 53 (11th Cir. 2006) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss." (quoting *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003))).

A.     **The Defendants**

Then-Acting Secretary Su brought this action against the Defendants, alleging they used child labor in the production of goods for sale throughout the United States. (Doc. 37 at 4). The complaint details the relationship between the Defendants in the manufacturing of automobiles. (*See id. passim*). HMMA assembles the final product, the automobile itself, at a facility in Montgomery, Alabama. (*Id.* at 2). HMMA receives component parts (including body panels) from SMART. (*Id.* at 4). SMART, according to the complaint, "existed at HMMA's direction," provided HMMA with parts as needed, and sold "nearly all, if not the entirety, of the component parts" it manufactured to HMMA. (*Id.* at 7). SMART manufactures these component parts for HMMA at a facility in Luverne, Alabama, "us[ing] robots and molds that were owned and provided by HMMA to manufacture the component parts."[7] (*Id.* at 2, 7). The complaint alleges that SMART had no "separate or independent business purpose" besides providing HMMA parts and that "employees at SMART were subject to HMMA's Code of Conduct." (*Id.* at 7). To provide labor for the facility, SMART used BPS, a staffing agency that the Plaintiff alleges "is no longer in business." (*Id.* at 3).

The Plaintiff claims that HMMA had significant control over SMART. HMMA allegedly "owned 72.45 percent of SMART, Inc., the corporation that owned SMART," "loaned SMART significant sums of money (exceeding $100,000,000)," "indirectly controlled and supervised the minor employee(s)," "retained the right to modify the terms

---

[7] SMART has changed its name to ITAC Alabama but still operates in Luverne. (*Id.* at 2).

and conditions of their employment," and "significantly invested in equipment and facilities necessary to [the employees'] work." (*Id.* at 7). Further, HMMA's employees served as corporate officers of SMART and on SMART, Inc.'s board of directors. (*Id.*). Finally, the Plaintiff alleges that HMMA exerts additional control over SMART as it concerns the employment of children. (*Id.*). HMMA "requires SMART to affirm that [it] complies with all applicable laws regarding the employment of children" and "to immediately notify HMMA's General Counsel specifically if any person under the age of 18 is working at SMART or any of SMART's staffing agencies." (*Id.* at 7–8). HMMA "may unilaterally direct SMART to audit itself" and its staffing agencies "to fully review all employees and assess compliance with applicable child labor laws" and force SMART "to implement and change its compliance monitoring regarding child labor violations and to strengthen its human resources functions." (*Id.* at 8). HMMA may *sua sponte* decide to conduct an audit of SMART, which SMART must acquiesce to and support. (*Id.*). After the discovery of the child labor violations alleged in the complaint, HMMA directed audits to occur and required SMART to change its monitoring of child labor. (*Id.*).

**B.    Alleged Violations of the Fair Labor Standards Act ("FLSA") – Child Labor**

From July 11, 2021, through February 1, 2022, BPS employed "EC," a thirteen-year-old girl, who it supplied to work at the SMART facility. (*Id.* at 3). EC began working at SMART under the name "E\*\*\*\*\* L\*\*\*\*\*." (*Id.* at 5). When documents showing this name were rejected, EC presented new documents with the name "J\*\*\*\*\* O\*\*\*\*\*." (*Id.*). While working at SMART, EC's name badge said "E\*\*\*\*\* L\*\*\*\*\*" although she was paid under the name "J\*\*\*\*\* O\*\*\*\*\*." (*Id.*). EC's "appearance and physical

6

characteristics [] suggested that she was very young." (*Id.*). During her employment, EC "worked long hours, up to 50 to 60 hours per week," "operating machines that shaped metal sheets into car parts" in SMART's Luverne facility. (*Id.* at 4). Despite her young appearance and long hours, the complaint claims that SMART never took any action to verify her (or any other employee's) age. (*Id.* at 5). SMART only discovered EC's employment after she failed to return home after work one day, which prompted her father to contact police, who issued an AMBER alert. (*Id.*). EC was later found in Georgia with an adult male coworker from SMART. (*Id.*). After the discovery of EC's age, SMART informed BPS that two other employees (alleged to be EC's siblings) could no longer work at the SMART plant. (*Id.* at 5–6).

After EC's discovery, the complaint alleges Reuters, a news organization, "interviewed former employees of SMART, who confirmed that child labor had been widespread at the plant during their time working there." (*Id.* at 6).

C.  **Su's Service as Acting Secretary of Labor[8]**

The United States Senate confirmed Su as Deputy Secretary of Labor in July 2021. (Doc. 60 at 13). After the Secretary of Labor (who was confirmed by the Senate) resigned in March 2023, Su became the Acting Secretary of Labor pursuant to 29 U.S.C. § 552. (*Id.*). While she was Acting Secretary, President Biden twice nominated her to serve as Secretary, but the Senate returned her nomination to the President both times. (*Id.*). Su filed this lawsuit on May 30, 2024, approximately fourteen months after she began serving

---

[8] The recitation of facts in this section follows the Magistrate Judge's Recommendation, the portion of which no party filed an objection to.

7

as Acting Secretary. (*Id.* at 13–14). On January 21, 2025, Su was replaced as Acting Secretary. (*Id.* at 14).

## IV.  DISCUSSION

None of the Defendants objected to the Magistrate Judge's Recommendation that HMMA's and BPS's motions to strike be denied. Therefore, that portion of the Recommendation receives clear error review, and upon an independent review of the case, the Court finds no error in the Magistrate Judge's conclusion and adopts his recommendation that the motions to strike (docs. 39, 41) be DENIED.

Each Defendant, however, did lodge specific objections to the Magistrate Judge's Recommendation on the motions to dismiss, but most of the objections overlap. The three principal objections relevant to all three Defendants are that the Magistrate Judge erred in finding that (1) the Secretary has Article III standing, (2) then-Acting Secretary Su was constitutionally exercising her authority and could bring this suit, and (3) the Plaintiff sufficiently pleaded the Defendants' mental states. (*See* docs. 63, 64, 65). The Defendants objected with sufficient specificity, so the Court reviews each of the objected to conclusions *de novo*. The Court addresses the Defendants' objections in turn.

### A.   The Secretary's Article III Standing

All of the Defendants objected to the Magistrate Judge's analysis and conclusion that the Secretary can seek prospective injunctive relief for past violations of child labor laws. As HMMA noted in its objection, the Defendants claim the Plaintiff cannot "establish a sufficient likelihood of future injury." (Doc. 63 at 10; *see also* doc. 65 at 6). The Defendants argue the Magistrate Judge incorrectly relied on the Secretary of Labor's

8

*statutory* authority to bring this suit in finding the Secretary has *constitutional* standing to bring it under Article III. (*See id.* at 13–18; doc. 64 at 1; doc. 65 at 4–8). BPS raises a separate standing argument, asserting that the Plaintiff lacks standing to seek a prospective injunction against it because it is no longer in business. (*See* doc. 64 at 2–11). The Court first considers the standing arguments asserted by all Defendants before turning to BPS's discrete argument.

### 1.     Injury in Fact—All Defendants

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In order to have standing, a plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). The Defendants argue the Secretary cannot satisfy the first prong: injury in fact. Specifically, they claim that any alleged child labor violations occurred in the past, and the Secretary has not shown that any violations are likely to recur such that there is no "real and immediate threat of future harm." (Doc. 63 at 14; *see also* doc. 65 at 7–8). In support, HMMA cites a series of cases. (*See* doc. 63 at 13–14 & n.2 (citing cases)). Each of these cases, however, is distinguishable in one key aspect: the Secretary is not a private party.

As the Secretary notes in her response to HMMA's objections, "HMMA cites no case, and the Secretary is unaware of any such case, where a court has found that the Secretary of Labor did not have 'standing' to enforce the child labor provisions of the

FLSA." (Doc. 68 at 4). Congress has given the Secretary—and only the Secretary—the ability to seek injunctive relief for violations of the FLSA. *See Powell v. State of Fla.*, 132 F.3d 677, 678 (11th Cir. 1998) ("Although this Court has not yet addressed the issue, we follow the decisions of the other circuits which have held that the plain language of the Act provides that the Secretary of Labor has the exclusive right to bring an action for injunctive relief." (citing cases)). The complaint alleges (through a report by Reuters) that "child labor had been widespread at the [SMART] plant." (Doc. 37 at 6). Even though "HMMA directed that [SMART conduct audits] following the child labor violations alleged in th[e] [c]omplaint," there is no allegation regarding the result of those audits. (*Id.* at 8).

Granted, the complaint does not allege that the Defendants currently employ any underaged labor, but it is also silent as to any actions taken by the Defendants to ensure no such violations occur in the future beyond the initial audit. With the allegations that EC's employment went undiscovered absent an intervening circumstance when she crossed state-lines, her father could not locate her, and an AMBER alert was issued, the Secretary has shown there is a sufficient threat of future injury to satisfy Article III. *Cf. United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) ("The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion. For to say that the case has become moot means that the defendant is entitled to dismissal as a matter of right[.] The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement." (internal citations omitted) (analyzing the enforcement ability of the Federal Trade

10

Commission under the Clayton Act)). Accordingly, the Defendants' objections on this basis are due to be overruled.

### 2. Redressability—BPS

In her complaint, the Plaintiff alleges that "BPS is no longer in business." (Doc. 37 at 3). BPS argued in its motion to dismiss—and emphasizes in its objection to the Magistrate Judge's Recommendation, (*see* doc. 64 at 2–11)—that a prospective injunction cannot issue against it, (doc. 41 at 2). The Court agrees with BPS.

The Secretary has standing to seek prospective injunctive relief against a defendant who has previously violated the FLSA even where that defendant is currently in compliance with the FLSA. *See Dunlop v. Davis*, 524 F.2d 1278, 1280–81 (5th Cir. 1975).[9] That much is uncontroversial. *See Martin v. Funtime, Inc.*, 963 F.2d 110, 114 (6th Cir. 1992); *Brock v. Big Bear Mkt. No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987); *Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980). None of those cases, however, involved a defendant that was no longer in business. Instead, it was a live question in those cases whether or not the defendant's current compliance with the FLSA would survive the pending litigation. *See Dunlop*, 524 F.2d at 1281 (reversing a district court's decision not to permanently enjoin the defendant on the basis that the defendant "had ceased his violations following their discovery . . . and had not resumed them by the time of the trial" because "current compliance with the requirements of FLSA is no bar to prospective

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

injunctive relief"). That situation is distinguishable from the instant case because BPS is not merely complying with the FLSA due to the instant lawsuit—it "is no longer in business." (Doc. 37 at 3).

Accordingly, the issue is not, as the Plaintiff attempts to frame it, merely whether a prospective injunction will ultimately be appropriate. (*See* doc. 70 at 4–6). Rather, BPS's defunct status goes to redressability, which requires the Court to "ask whether a decision in [the P]laintiff's favor would 'significant[ly] increase . . . the likelihood' that she 'would obtain relief that directly redresses the injury' that she claims to have suffered." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019). An injunction against BPS would not increase the likelihood that the Plaintiff would obtain relief to redress her injury because BPS is already out of business and therefore an injunction against it would have no force. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (11th Cir. 2005) ("The plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury."). This is true despite the fact that the prospective injunction Plaintiff seeks would also flow to BPS's "officers, agents, servants, and employees." (Doc. 37 at 10). Any injunction against those individuals would be limited to their capacities related to BPS and would therefore have as little an effect as an injunction against BPS itself. For this reason, the Court lacks subject matter jurisdiction as to Plaintiff's claims against BPS. *See Lewis*, 944 F.3d at 1301 ("'[I]t must be *the effect of the court's judgment on the defendant*'—not an absent third party—'that redresses the plaintiff's injury, whether directly or indirectly.'" (emphasis in original) (quoting *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015))); *see also*

12

*Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 782 n.1, 815–16 (W.D. Pa. 2013) (granting injunctive relief against an individual defendant, but *not* against his since-bankrupted business, which had been dismissed from the case). The claims against BPS are therefore due to be dismissed without prejudice.

**B.     Constitutionality of the Acting Secretary Position**

The Defendants next object to the Magistrate Judge's conclusion that 29 U.S.C. § 552 is constitutional. Section 552 establishes "the office of the Deputy Secretary of Labor, which shall be filled by appointment by the President, by and with the advice and consent of the Senate" and authorizes the Deputy Secretary, "in case of the death, resignation, or removal from office of the Secretary, [to] perform the duties of the Secretary until a successor is appointed." The Defendants claim § 552 is unconstitutional both facially and as-applied because it violates the Appointments Clause of the United States Constitution. Because Su was not constitutionally in her role as Acting Secretary, the Defendants argue, she did not have standing to bring this suit in the first place.

As an initial matter, and as the Magistrate Judge noted, "unlawful service under Article II does not nullify Article III jurisdiction." (Doc. 60 at 17 n.11 (citing *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1190 (9th Cir. 2016))). In *Gordon*, the court reasoned that "no [c]ourt, including the Supreme Court, has ever suggested that Article II problems nullify Article III jurisdiction," so "[w]hile the failure to have a properly confirmed director may raise Article II Appointments Clause issues, it does not implicate [the court's] Article III jurisdiction to hear the case." 819 F.3d at 1190.

13

At least four other district courts have addressed the constitutionality of Su's service under either the Federal Vacancies Reform Act ("FVRA") or 29 U.S.C. § 552. All four found Su's service did not violate the Appointments Clause. *See Associated Builders & Contractors of Se. Tex., Inc v. Su*, 771 F. Supp. 3d 879, 908–12 (E.D. Tex. Mar. 19, 2025); *Colt & Joe Trucking, LLC v. U.S. Dep't of Labor*, 2025 WL 56658, at *15–16 (D.N.M. Jan. 9, 2025) (appeal pending);; *Su v. Coway USA, Inc.*, 758 F. Supp. 3d 1186, 1192–93 (C.D. Cal. 2024); *Su v. WiCare Home Agency, LLC*, 2024 WL 3598826, at *17 (M.D. Pa. July 31, 2024) (appeal pending). The Court agrees with these four courts and the Magistrate Judge and concludes that Su's service as Acting Secretary did not violate the Appointments Clause.[10] Because Su's tenure as Acting Secretary did not violate the Appointments Clause, the Defendants' facial challenge necessarily fails.[11] *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) ("[A] plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its

---

[10] The Defendants rely on *United States v. Eaton*, 169 U.S. 331, 343 (1898), in which, the Supreme Court upheld the constitutionality of a statute allowing an inferior officer to serve as acting officer "[b]ecause the subordinate officer [wa]s charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions." *Id.* The Court rejects the Defendants' arguments that the temporal limitations in § 552 are insufficient because they do not specify an exact time period of service. *See Coway*, 758 F. Supp. 3d at 1192–93 ("Section 552 . . . authorizes a Deputy Secretary 'appoint[ed] by the President, by and with the advice and consent of the Senate' to 'perform the duties of the Secretary until a successor is appointed'—that is, temporarily." (quoting 29 U.S.C. § 552)).

[11] Even if § 552 is unconstitutional, Su's service complied with the time restraints imposed by the FVRA at the time of the filing of this suit. *See Colt & Joe Trucking*, 2025 WL 56658, at *17 ("According to the text of the FVRA, . . . Defendant Su [could] serve [as Acting Secretary of Labor] at least through August of 2024."). This case was filed on May 30, 2024 (doc. 1), and, as HMMA notes in its objection, standing "is measured at the time the suit is filed, based on an analysis of the facts as they then exist," (doc. 63 at 28 (citing *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993))).

applications." (second alteration in original) (quoting *United States v. Salerno*, 481 739, 745 (1987))). The Defendants' objection on this front is therefore due to be overruled.

## C. Defendants' Mental States

The Defendants also object to the Magistrate Judge's conclusion that the Secretary sufficiently pled the knowledge requirement for a FLSA child-labor claim. In the Eleventh Circuit, a plaintiff must allege the employer "knew or should have known" of the FLSA violation.[12] *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015). The Defendants claim the Secretary's allegations fail to set forth sufficient facts to suggest they should have known about EC's employment because the complaint states only that they "could have" known. (Doc. 37 at 8). Because of the unique structure of the employment practice here, the Court addresses SMART's and HMMA's alleged culpability separately.[13]

### 1. SMART

Even though SMART operated the facility where the minor child is alleged to have been employed, SMART objects to the Magistrate Judge's conclusion that it knew or should have known of EC's minor status. In *Gulf King Shrimp Company v. Wirtz*, the Fifth Circuit stated that: "The cases must be rare when prohibited work can be done within the plant, and knowledge or the consequences of knowledge avoided." 407 F.2d 508, 512 (5th

---

[12] The Court elaborates on this standard in child labor cases specifically below. *See infra* Section IV.C.2.

[13] Because the Court has determined that the Secretary does not have standing to seek a prospective injunction against BPS, the Court does not consider its argument that the amended complaint fails to sufficiently allege its mental state.

Cir. 1969). The Secretary alleges in the amended complaint that EC worked in SMART's factory. (Doc. 37 at 4). SMART argues that the Magistrate Judge incorrectly determined that SMART's dismissal of "two individuals who appeared to be underage soon after EC's underage status was exposed" supported denying the motion to dismiss. (*See* doc. 65 at 10 (quoting doc. 60 at 19–20)). At this stage of the litigation, that argument fails. With all facts read in the Secretary's favor, SMART does not demonstrate that the allegations in the complaint, taken as true, fall within the "rare" class of cases when an operator of a plant where prohibited work has been done can disclaim knowledge of the employment practices within its own factory.[14] Thus, SMART's objection is due to be overruled.

2. **HMMA**

HMMA objects to the Magistrate Judge's conclusion that HMMA should have known about the child labor violations within SMART's factory. Specifically, HMMA claims the Magistrate Judge ignored "the plain language of the [ ] complaint to construe the facts as alleged by the [Secretary] in a manner that cannot be reconciled with the facts as actually pleaded." (Doc. 63 at 39). But the complaint does allege HMMA had a close relationship with SMART that makes them "a single employer for purposes of liability under the FLSA." (Doc. 37 at 8). It further alleges close corporate ties between HMMA and SMART, including: HMMA employees serving as corporate officers of SMART and

---

[14] In its reply, (doc. 79 at 5–8), SMART cites *Su v. Mar-Jac Poultry of Ala., LLC*, in which a district court determined that the plaintiff had failed to prove that the defendant possessed the requisite mental state despite the fact that the defendant's underaged employees were present in the defendant's factory. 2024 WL 3278954, at *3–4 (N.D. Ala. July 2, 2024). That decision, however, resolved the plaintiff's motion for a temporary restraining order and a preliminary injunction. *Id.* at *1. Accordingly, *Mar-Jac* is distinguishable both in that the plaintiff there had the burden to demonstrate a substantial likelihood of success on the merits and in that it was decided on an evidentiary record. *See id.* at *2–3.

on its parent company's board; HMMA providing the machinery SMART uses to manufacture parts for HMMA; HMMA retaining the ability to conduct audits of SMART at HMMA's discretion, in which SMART must participate; HMMA's ability to order SMART to audit itself; HMMA requiring SMART to immediately notify HMMA's General Counsel if an underaged person works at SMART or any of its staffing agencies; HMMA requiring SMART employees to adhere to the requirements in the HMMA handbook; HMMA's ability to require SMART to change its compliance monitoring; and HMMA ordering SMART to change its procedures following discovery of the facts underlying the complaint. (*Id.* at 7–8).

This Court begins in the same place as the Fifth Circuit in *Gulf King Shrimp*, which began its analysis "with the precept . . . that a corporation 'must be held strictly accountable for the child labor violations of subordinates.'" 407 F.2d at 512 (quoting *Lenroot v. Interstate Bakeries Corp.*, 146 F.2d 325, 328 (8th Cir. 1945)). In the intervening years, the knowledge requirement for FLSA violations of cases unrelated to child labor has slightly changed in Eleventh Circuit jurisprudence as an employer must either "have knowledge" or have "had 'the opportunity through reasonable diligence to acquire knowledge.'" *Reich v. Dep't of Conservation & Nat. Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (quoting *Gulf King Shrimp*, 407 F.2d at 512). In other words, the question is whether the employer "knew or should have known" of the FLSA violation. *Bailey*, 776 F.3d at 801. But neither *Bailey* nor *Reich* are child labor cases. Rather, they both pertain to compensation for overtime work. *See Bailey*, 776 F.3d at 799; *Reich*, 28 F.3d at 1078. Therefore, the Eleventh Circuit has not disturbed the Fifth Circuit's principle regarding FLSA violations for child labor.

17

Still, "an employer's knowledge is measured in accordance with his 'duty . . . to inquire into the conditions prevailing in his business.'" *Gulf King Shrimp*, 407 F.2d at 512 (quoting *People ex rel. Price v. Sheffield Farms-Slawson-Decker Co.*, 121 N.E. 474, 476 (N.Y. 1918)). And the complaint alleges a close relationship between HMMA and SMART despite the fact that EC worked in a factory "more than [forty] miles away" from HMMA. (Doc. 63 at 40). While SMART and HMMA are two separate corporate identities, the Secretary alleges they are "joint employers" and provides sufficient facts to suggest a close corporate relationship. This close corporate relationship implies HMMA had a duty to inquire into the labor conditions of one of its subordinates—even one that is a separate corporate entity. At this stage in the litigation, with all facts read in the Secretary's favor, the single allegation that HMMA "could have known" about the child labor in SMART's factory does not defeat the other allegations in the complaint suggesting HMMA should have known about the FLSA violations occurring in one of its subsidiaries. *Cf. Galloway v. Chugach Gov. Servs., Inc.*, 199 F. Supp. 3d 145, 152–53 (D.D.C. 2016) (finding factual allegations sufficiently pled knowledge requirements under the FLSA). HMMA's arguments are better suited for resolution with a fully developed record at summary judgment. Thus, HMMA's objection is due to be overruled.

## V. CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED as follows:

1. HMMA's (doc. 63) and SMART's (doc. 65) objections are OVERRULED.

2. The Recommendation of the Magistrate Judge (doc. 60) is ADOPTED as modified herein.

3. HMMA's (doc. 39) and SMART's (doc. 42) motions to dismiss are DENIED. BPS's motion to dismiss (doc. 41) is GRANTED. The Plaintiff's claims against BPS are DISMISSED without prejudice.

4. HMMA's motion to strike (doc. 39) and BPS's motion to strike (doc. 41) are DENIED.

5. The case is REFERRED back to the Magistrate Judge for further proceedings.

DONE this 10th day of September, 2025.

                                             /s/Emily C. Marks  
                                             EMILY C. MARKS  
                                             CHIEF UNITED STATES DISTRICT JUDGE